IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED R. JACOBEIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 1924 |
| | ) | |
| RICH TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 227 and MACEO M. RAINEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Fred Jacobeit ("Jacobeit") alleges in his four-count First Amended
Complaint [15] that defendants Board of Education of Rich Township High School District
227 ("District 227") and Maceo M. Rainey ("Rainey"), Principal of Rich Central High
School, individually and in his official capacity, engaged in multiple violations of the federal
law against Jacobeit: Count I alleges both defendants engaged in racial discrimination in
violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§
1981"), and 42 U.S.C. § 1983 ("§ 1983"); Count II alleges District 227 engaged in age
discrimination in violation of the Age Discrimination in Employment Act of 1967
("ADEA"); Count III alleges District 227 discriminated against Jacobeit based on a disability
in violation of the Americans with Disabilities Act of 1990 ("ADA"); and Count IV alleges
both defendants violated Jacobeit's Fourteenth Amendment right to due process pursuant to
42 U.S.C. § 1983. District 227 filed its Answer [18] to Counts II and III, and jointly with

Rainey filed a motion to dismiss Counts I and IV [16]. This court has subject-matter jurisdiction over the claims at issue in this case pursuant to 28 U.S.C. § 1331.

For the reasons set forth below, defendants' motion to dismiss is granted as to Rainey in his official capacity on both Counts I and IV and granted as to Rainey in his individual capacity on Jacobeit's Count I allegations of a Title VII violation by Rainey. Defendants' motion is denied as to District 227 in its entirety and as to Rainey in his individual capacity as to Jacobeit's Count I allegations of violations of § 1981 and § 1983 and Count IV due process claims.

<u>BACKGROUND</u>

For the purposes of Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As a result of this rule, the following are the facts that have been accepted by the court as found in Jacobeit's First Amended Complaint and viewed in the light most favorable to Jacobeit.

Jacobeit was hired by District 227 in 1978 to teach physical education and driver's education and has been a certified staff member throughout his employment with District 227, which continues to this day. In addition to his teaching position, Jacobeit has coached a variety of sports. Jacobeit is a white male over the age of 40 who suffers from syringomyelia, a disability allegedly recognized under 42 U.S.C. § 12102(2).

On May 18, 2008, Jacobeit provided District 227 with notice of his intent to retire at the close of the 2011-2012 academic year. Around June 2007, Jacobeit advised the Rich East High School Athletic Director, Jimmy Daniels, that he was interested in applying for the open girls basketball coaching position for the 2007-2008 academic year. Jacobeit applied

for that position on July 1, 2007. However, District 227 hired an African-American non-disabled female under the age of 40 to fill the open coaching position. Jacobeit alleges that the reasons that District 227 provided for hiring this candidate were that she was more "energetic" than Jacobeit and that she would work better in the school's "diverse" community. The student body at Rich East High School is predominantly African-American.

Jacobeit later inquired about other coaching position openings for the Fall 2007 season, and Will Dwyer ("Dwyer"), the Rich Central High School Athletic Director, told Jacobeit that there was an opening for an assistant girls basketball coach. Jacobeit interviewed for the position on October 19, 2007. Jacobeit was offered a job on October 25, 2007 by Dwyer, which Jacobeit accepted. Jacobeit then began performing as the assistant girls basketball coach on October 29, 2007, and District 227 and Rainey admit that a team handbook which was given to each team member listed Jacobeit as the girls assistant basketball coach. Jacobeit claims that Dwyer told him that, due to the late date of hire, Jacobeit's pay as an assistant coach would not begin until January; Jacobeit agreed to this arrangement.

On November 2, 2007, Rainey signed a "Recommendation for Hire" form for Jacobeit as the girls assistant basketball coach. At the time Rainey signed this form, Rainey had never met Jacobeit in person and was unaware of Jacobeit's race. From October 29, 2007 through November 13, 2007, Jacobeit attended all practices and activities required of him as the assistant girls basketball coach.

On November 13, 2007, Dwyer summoned Jacobeit to his office and advised Jacobeit that his coaching position was rescinded. According to Jacobeit, Rainey decided to rescind the position, and District 227 approved of this decision. Jacobeit was not given a reason for

the rescission and he was not provided with any type of pre-termination hearing or opportunity to be heard prior to the termination of his position. District 227 issued Jacobeit a paycheck for the work he performed as assistant coach. The assistant coach position was later offered to a young African-American female who did not take the position, and ultimately, the position of assistant girls basketball coach was not filled for the 2007-2008 academic year, which was unprecedented.

Rainey later told Jacobeit that District 227 rescinded his assistant girls basketball coach position because he was "racially insensitive" to African-American boys on the basketball team of another high school, whom Jacobeit had coached during the 2005-2006 school year. Jacobeit claims that Rainey based this assertion on hearsay reports. Rainey claims that he learned of these "racially insensitive" remarks on the first day of the girls basketball practice. Rainey never asked Jacobeit about these allegations, nor did he conduct an investigation or ask anyone else to investigate the allegations made against Jacobeit. District 227, however, investigated the incident surrounding Jacobeit's alleged racial insensitivity at the time it occurred. Jacobeit was not disciplined by District 227 for this purported misconduct during the 2005-2006 school year or any time thereafter.

According to Jacobeit, Rainey told people in the school community that District 227 terminated Jacobeit's employment because of racially insensitive gifts given to members of a boys basketball team. Rainey allegedly said that "this person," allegedly referring to Jacobeit, could not be given an opportunity to work in the school district. As a result of Rainey's statement, Jacobeit was allegedly subjected to humiliation, could not obtain another coaching position in the school district, and District 227 has refused to hire Jacobeit for any other coaching position.

<u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007). Fed. R. Civ. P. 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009).

<u>ANALYSIS</u>

In their joint motion to dismiss, District 227 and Rainey assert multiple arguments for dismissal; the court will consider each in turn.

**1.      Racial Discrimination under Count I**

Count I of Jacobeit's complaint alleges racial discrimination in violation of Title VII, § 1981 and § 1983. Jacobeit brings Count I against both defendants District 227 and Rainey, who ask this court to dismiss all of Count I against them both. While District 227 and Rainey objected to Count I because it "blurs multiple causes of action," they substantively addressed racial discrimination in violation of Title VII, § 1981 and § 1983 within their motion and brief; the court will address all three bases for Count I's alleged claims.

**a.      Title VII**

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

5

###### i. Rainey in His Official Capacity

District 227 and Rainey argue that Rainey should be dismissed as a defendant in his official capacity because suing Rainey is redundant, as it is tantamount to suing District 227, which is already a defendant in this case.  *See Moore v. Bd. of Educ.*, 300 F. Supp. 2d 641, 646 (N.D. Ill. 2004) (Gettleman, J.).  While Jacobeit mentions District 227 and Rainey's argument that suing Rainey in his official capacity is redundant, Jacobeit did not attempt to refute or oppose this argument.  Such a failure to oppose acts as a waiver.  *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (holding that a failure to oppose is a waiver); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (holding that the plaintiff defaulted when he failed to respond to arguments raised in a motion to dismiss); *Rosen v. Mystery Method, Inc.*, No. 07-5727, 2008 U.S. Dist. LEXIS 20667, at *17 (N.D. Ill. Mar. 14, 2008) (Kocoras, J.) (holding that there was waiver and forfeiture, and dismissing a conspiracy claim after the plaintiff failed to respond to arguments raised in the defendant's motion to dismiss).  As a result, Count I is dismissed against Rainey in his official capacity in its entirety.  The court applies the same reasoning to Jacobeit's § 1981 racial discrimination claim as well as Jacobeit's § 1983 racial discrimination claim encompassed in Count I and Jacobeit's due process claims in Count IV. Those parts of those counts are dismissed against Rainey in his official capacity.

###### ii. Rainey in His Individual Capacity

A Title VII claim is viable only against an "employer." 42 U.S.C. § 2000e-2(a)(1); *see also Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (dismissing a Title VII claim against a supervisor in his individual capacity because he was not an employer within the meaning of Title VII).  Title VII defines an "employer" as a "person engaged in an industry

affecting commerce who has fifteen or more employees . . . and any agent of such a person."
42 U.S.C. § 2000(e)(b). District 227 and Rainey argue that Jacobeit has not sufficiently pled
a cause of action under Title VII against Rainey in his individual capacity because Rainey
does not qualify as an employer for purposes of Title VII. This court agrees. *Williams*, 72
F.3d at 553 ("A supervisor, in his individual capacity, does not fall within Title VII's
definition of employer."); *see also Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996).
Rainey, in his individual capacity, is merely a supervisor and, therefore, Jacobeit's Title VII
claim against Rainey must fail as a matter of law because Jacobeit can state no set of facts
that would enable him to recover under the statute. In addition, Jacobeit failed to address
this argument by District 227 and Rainey in his brief and has consequently waived the
argument. *See Wojtas*, 477 F.3d at 926.

### iii.    District 227

As mentioned above, District 227 and Rainey moved to dismiss Count I against both
defendants, which would presumably include the Title VII claim against District 227.
However, District 227 and Rainey failed to argue any basis for dismissal of Jacobeit's Title
VII claim against District 227 and this court will not make the parties' arguments for them.
*Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.,* 515 F.3d 718, 721 (7th Cir. 2008).
Jacobeit's Title VII claim against District 227, therefore, survives the motion to dismiss.

### b.    Section 1981

42 U.S.C. § 1981 prohibits racial discrimination in connection with a contractual
relationship. *See* 42 U.S.C. § 1981(b).

In order to state a claim under § 1981,

a plaintiff must: (1) be a member of a racial minority; (2) show that the
defendants intended to discriminate on the basis of race; and (3) show that the

7

> defendants' activities concern the making, performance, modification, or termination of a contract, the enjoyment of the benefits of a contractual relationship, or the conditions of a contractual relationship.

*Agnew v. Bd. of Educ.*, No. 97-5993, 1998 U.S. Dist. LEXIS 10195, at *24 (N.D. Ill. July 7, 1998) (Manning, J.) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

If, as here, the plaintiff alleges reverse discrimination, then instead of alleging that the plaintiff is member of a racial minority, the "plaintiff must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something fishy about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820-21 (7th Cir. 2006) (internal quotations omitted).

### i.     Rainey in His Individual Capacity

District 227 and Rainey advance a number of arguments why this court should dismiss Jacobeit's § 1981 claim.

First, District 227 and Rainey argue that Jacobeit has not adequately pled any anti-white animus so as to meet the "background circumstances" test stated above. *See Hague*, 436 F.3d at 820-21. In *Hague*, a summary judgment case, the court found that the plaintiffs had sufficiently demonstrated reverse discrimination to survive a summary judgment motion under this test by providing evidence that they were fired from a position by an African-American supervisor and that they were replaced by African-Americans. *Id.* at 822. Analogously, albeit in a 12(b)(6) context, Jacobeit alleges that he applied for two coaching positions, one for which he was not hired, and the other for which he alleges he was hired and then terminated. Although the position for the assistant girls basketball coach ultimately remained vacant, Jacobeit alleges that both the head coach position and the assistant coach

position were *offered* to young African-American females, and that Rainey is also African-American. (Dkt. 15, 1st Amend. Compl., ¶¶ 54, 76, 77.) Under the reasoning of *Hague*, if Jacobeit can present evidence supporting his allegations, then he would survive a motion for summary judgment. As a result, this court finds that Jacobeit has pled background circumstances sufficient to maintain a claim of reverse discrimination under § 1981.

Next, District 227 and Rainey argue that the "same actor inference" should be applied to this case as laid out in *Chiaramonte v. Fashion Bed Group*, 129 F.3d 391, 399 (7th Cir. 1997). *See also Ritter v. Hill 'n Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). In *Chiaramonte*, the Seventh Circuit discussed a strong presumption of non-discrimination that arises when one is hired and fired by the same person within a short time frame. *Chiaramonte*, 129 F.3d at 399. However, *Chiaramonte* and *Ritter* are summary judgment cases, and were not decided on a 12(b)(6) motion to dismiss. *Chiaramonte*, 129 F.3d at 399; *Ritter*, 231 F.3d at 1040. It would not be appropriate to dismiss Jacobeit's claims based on an evidentiary presumption where Jacobeit has sufficiently pled the kind of background circumstances needed to support a case of reverse discrimination.

Jacobeit's allegation that Rainey was unaware of Jacobeit's race at the time that Rainey signed the "Recommendation for Hire" form assists Jacobeit in overcoming the previous two arguments. District 227 and Rainey argue that Jacobeit's allegation that Rainey did not know that Jacobeit was white is unfounded in light of Jacobeit's other allegation that he has worked for the school district for 30 years. The defendants urge this court to disregard Jacobeit's allegation that Rainey was unaware of Jacobeit's race as false, asserting that courts do not have to accept as true unsupported conclusions of fact. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006). However, this court's

duty in a motion to dismiss is to view the allegations in a light most favorable to Jacobeit. It is possible that Rainey was a new principal or that Jacobeit did not work directly under Rainey prior to applying for the assistant girls basketball coach position in 2007. As a result, it is possible that Rainey was not aware of Jacobeit's race until after he signed the "Recommendation for Hire" form.

District 227 and Rainey next contend that Rainey is entitled to qualified immunity. The law is clear that "qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987). However, "dealing with the issue of qualified immunity on a Rule 12(b)(6) motion is a 'delicate matter that district courts should approach carefully'; the Seventh Circuit has stated that qualified immunity 'is almost always a bad ground for dismissal and is better addressed at summary judgment.'" *Shaikh v. City of Chicago*, No. 00-4235, 2001 U.S. Dist. LEXIS 1386, at *23 (N.D. Ill. Feb. 9, 2001) (Kennelly, J.) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3, 775 (7th Cir. 2000)). Two questions arise in the context of qualified immunity: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the plaintiff has demonstrated that the applicable constitutional standards were "clearly established" at the time in question. *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996); *see also Anderson*, 483 U.S. at 639 ("Our cases . . . generally provid[e] government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."). For the purpose of surviving a motion to dismiss, this court finds that Jacobeit has sufficiently alleged a constitutional violation in the form of racial discrimination under § 1981 and § 1983, and this court further finds that at the

10

time of the alleged incidents in 2007, the applicable constitutional standard had been clearly established, *i.e.* a supervisor may not discriminate against an employee on the basis of race. *See, e.g.*, *Auriemma v. Rice*, 910 F.2d 1449, 1457 (7th Cir. 1990) (holding that "[n]o reasonable police chief could have objectively and reasonably concluded" that he or she could discriminate against his or her subordinates based upon race without violating their rights). Viewing the complaint's allegations in the light most favorable to Jacobeit, Rainey is not entitled to qualified immunity. District 227 and Rainey may, however, assert this argument again at the summary judgment stage.

Lastly, District 227 and Rainey also argue that Rainey is entitled to "good faith immunity" because of the proffered explanation for Jacobeit's termination – that Jacobeit allegedly made racially insensitive remarks and gave racially insensitive gifts to high school athletes. District 227 and Rainey present, and this court finds, no legal basis for granting "good faith immunity" apart from the qualified immunity doctrine discussed above.

Because none of District 227 and Rainey's arguments with regard to dismissing Rainey in his individual capacity under § 1981 are viable, this claim survives the motion to dismiss.

### ii. District 227

In addition to the previously described elements of the *prima facie* case under § 1981, to allege liability of a governmental entity, such as a school board,

> [Jacobeit] needed to allege that (1) . . . [District 227] had an express policy that, when enforced, causes a constitutional deprivation; (2) . . . [District 227] had a widespread practice that, although not authorized by written law or express . . . policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)); *see also Cooney v. Rossiter*, No. 07-2747, 2008 U.S. Dist. LEXIS 81426, at *53 (N.D. Ill. Aug. 20, 2008) (Aspen, J.) (stating that a school board is a governmental entity subject to the municipal liability test outlined above).  A municipality may not be held liable under § 1981 under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Fogarty v. City of Chicago*, No. 01-2157, 2001 U.S. Dist. LEXIS 12572, at *14 (N.D. Ill. Aug. 17, 2001) (Lindberg, J.).

Jacobeit has not alleged an express policy or widespread practice; instead he relies on a decision of a final policymaker.  District 227 and Rainey argue that there was no decision by a final policymaker because Rainey does not qualify as such pursuant to Illinois law.  *See St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ( "[T]he identification of policymaking officials is a question of state law.").  The Seventh Circuit has clearly laid out who qualifies as a final policymaker in Illinois:

> In Illinois, the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose.  *See* 105 ILCS 5/10-20.5. The Illinois School Code requires the principal to submit personnel recommendations to the superintendent and requires the superintendent to make personnel recommendations to the board.  *See* 105 ILCS 5/10-21.4 (superintendent's administrative and personnel decisions are under direction of the board of education); 105 ILCS 5/10-21.4a (principal's administrative and personnel responsibilities are under supervision of superintendent).  Nothing in the School Code allows us to infer that a superintendant or principal has been delegated policymaking authority with respect to personnel decisions.  *See Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1325-26 (7th Cir. 1993).

*Duda v. Bd. of Educ.*, 133 F.3d 1054, 1061 (7th Cir. 1998).  As a result, this court finds that Rainey is not a final policymaker under Illinois law.

Jacobeit argues, however, that District 227 may act through others or ratify the decisions of subordinates and therefore become liable for those decisions. "[A] plaintiff seeking to establish a § 1983 claim against a municipality based on a 'ratification' theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004). District 227 and Rainey argue in their reply brief that Jacobeit has failed to allege that District 227 knew that Jacobeit was terminated because of racial animus. Jacobeit does, however, allege that District 227 knew that Rainey claimed to terminate Jacobeit due to alleged racially insensitive comments and gifts, that District 227 had already investigated those allegations, and that District 227 did not discipline Jacobeit as a result of that investigation. If Jacobeit was not disciplined, this court may infer that District 227 did not believe Jacobeit actually said or did anything inappropriate. Consequently, it is reasonable to infer that District 227 knew that Rainey's stated reasons for Jacobeit's termination were pretextual. Because the court must draw all reasonable inferences in favor of Jacobeit, it is fair to infer that District 227 knew and approved of Jacobeit's termination based on racial animus because it allowed Jacobeit to be fired in spite of his innocence regarding the accused behavior.

District 227 and Rainey's argument with regard to *Waters v. City of Chicago* is well taken, but is not appropriately applied in this case. In *Waters*, the court concluded that there must be proof that a final decision-maker actually approved of a decision and knew that there was an improper motive behind it. *Waters v. City of Chicago*, 580 F.3d 575, 583-84 (7th Cir. 2009). If a final decision-maker simply accepts a recommendation that is tainted by improper motive without conducting an independent review, the final decision-maker will

not be said to have the requisite intent. *See id.* *Waters*, however, is a case on summary judgment, where the plaintiff failed to produce *proof* that the school board intentionally deprived the plaintiff of a constitutional right. *Id.* at 30-31. Here, Jacobeit has alleged enough facts to give rise to an inference that District 227 knew that Jacobeit was not hired and was fired from the girls basketball coaching positions he sought for a pre-textual reason and approved of that decision. As a result, this court finds that Jacobeit has sufficiently alleged that his constitutional injury was caused by a final policymaker.

District 227 and Rainey further argue that the "same actor inference" should be applied because Jacobeit was employed by the school district for over 30 years. *Chiaramonte*, 129 F.3d at 399. As discussed above, however, it is not appropriate to foreclose Jacobeit's claim on a motion to dismiss simply because there is a presumption of non-discrimination. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) ("a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely'"). Also, as stated above, the complaint adequately alleges the background circumstances necessary to sustain a claim based on reverse discrimination. As a result, Jacobeit's § 1981 claim against District 227 survives the motion to dismiss.

### c. Section 1983

Title 42 U.S.C. § 1983 statutorily creates a claim and "remedy against 'any person' who, under color of state law, deprives another of rights protected by the constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992). Here, Jacobeit alleges disparate treatment based on membership in a protected class pursuant to the equal protection clause of

the Fourteenth Amendment.  *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 n. 3 (7th Cir. 2004).

> In order to prevail on an equal protection claim under § 1983, a plaintiff must show that 1) he is a member of a protected class; 2) he was similarly situated to individuals not of the protected class; 3) he was treated differently than those similarly-situated individuals; and 4) those who treated him differently acted with discriminatory intent.

*Swearingen-el v. Cook County Sheriff's Dep't*, 416 F. Supp. 2d 612, 617 (N.D. Ill. 2006) (Bucklo, J.) (citing *Johnson v. City of Fort Wayne,* 91 F.3d 922, 944 (7th Cir. 1996));  *see McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 514 (7th Cir. 1993) (concluding that a white plaintiff made out a *prima facie* case for reverse discrimination by meeting each element of the same test as traditional discrimination).

### ii.      Rainey in His Individual Capacity

To advance a § 1983 equal protection claim against Rainey, in his individual capacity, Jacobeit must set forth factual allegations showing that Rainey knew of or directly participated in a constitutional violation, recklessly permitted it to occur, and intentionally violated Jacobeit's constitutional rights.  *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982); *Murphy v. Chicago Transit Authority*, 638 F. Supp. 464, 468-69 (N.D. Ill. 1986) (Getzendanner, J.).

The court finds that Jacobeit has satisfied this test because he alleged that Rainey directly participated in the alleged constitutional deprivation by firing him based on racial animus, which a reasonable government employee would know is a constitutional violation.

For the reasons set forth above in the § 1981 discussion, this court also refuses to conclude that Rainey is entitled to qualified immunity or "good faith immunity," and will not dismiss this case based on the "same actor inference."  As a result, District 227 and Rainey's

motion to dismiss Rainey in his individual capacity with respect to Jacobeit's § 1983 claim is denied.

### iii. District 227

In addition to alleging the previously described *prima facie* case for § 1983 liability, to allege municipal liability under § 1983, just as with § 1981,

> [Jacobeit] needed to allege that (1) . . . [District 227] had an express policy that, when enforced, causes a constitutional deprivation; (2) . . . [District 227] had a widespread practice that, although not authorized by written law or express . . . policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). A municipality may not be held liable under § 1983 under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Fogarty v. City of Chicago*, No. 01-2157, 2001 U.S. Dist. LEXIS 12572 (N.D. Ill. Aug. 17, 2001) (Lindberg, J.).

Since the same standard applies for municipal liability under § 1983 as it does under §1981, there is no need to separately analyze this standard. Jacobeit may proceed under the theory that his constitutional injury was caused by a person with final policymaking authority through a ratification theory. This court also finds that the "same actor inference" does not bar Jacobeit's claim for the same reasons as stated above. As a result, Jacobeit's § 1983 claim against District 227 survives the motion to dismiss.

### 2. Due Process under Count IV

Jacobeit also alleges in his First Amended Complaint that his due process rights were violated because he was deprived of both his Fourteenth Amendment property and liberty interests.

#### a. Procedural Due Process – Property Interest

To state a claim for procedural due process, "a plaintiff must [allege] (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding the deprivation." *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). District 227 and Rainey claim that neither element has been pled sufficiently to survive their joint 12(b)(6) motion to dismiss.

#### i. Protected Property Interest

District 227 and Rainey first assert that Jacobeit was not deprived of a protected property interest because he was not entitled to either the head coach position at Rich East High School or the assistant coach position at Rich Central High School. District 227 and Rainey claim that a state employee only has a property interest in his or her employment if the state confers upon him or her a right to continued employment, such as through a tenure program. *See Smith v. Bd. of Educ. of Urbana Sch. Dist. No. 116*, 708 F.2d 258, 261 (7th Cir. 1983). In asserting that Jacobeit was not deprived of a protected property interest, District 227 and Rainey seem to argue that Jacobeit was never hired for the Rich Central position or, in the alternative, that Jacobeit was an at-will employee who could be terminated at any time and therefore did not have an interest in continued employment. This court will discuss each argument in turn.

First, there is a question as to whether Jacobeit was truly hired for the assistant girls basketball coach position. Jacobeit's allegations do suggest that Jacobeit had, at minimum, an at-will employment contract for that position. Jacobeit alleges that Dwyer offered him a coaching position, he performed his duties, he was terminated, and he was subsequently paid for his work. (Dkt. No. 15, 1st Amend. Compl., ¶¶ 61, 63, 68, 69, 73.) As a result of these allegations, this court finds that Jacobeit has pled sufficient facts to make it plausible that he was hired for the assistant girls basketball coach position.

District 227 and Rainey argue that no employment contract could have been formed because Dwyer did not have authority to bind the school district's Board of Education. District 227 and Rainey argue that the Illinois School Code expressly grants school boards the power to employ personnel for extracurricular activities, and that discretionary duties are non-delegable. *See* 105 ILCS 5/10-22.34; *see also Tyska by Tyska v. Bd. of Educ. of Twp. High Sch. Dist. 214*, 453 N.E.2d 1344, 1350 (Ill. App. Ct. 1983). Jacobeit contends that while the delegation of discretionary powers is prohibited, the school board is a corporate body which must act through its agents. "The acts of the agent are considered in law to be those of the principal." *Braught v. Bd. of Education*, 483 N.E.2d 623, 626 (Ill. App. Ct. 1985). An athletic director can be an agent of a school district. *See Lombardi v. Bd. of Trs. Hinsdale Sch. Dist. 86*, 463 F. Supp. 2d 867, 873 (N.D. Ill. Mar. 3, 2006) (Zagel, J.) (dismissing individual defendants from a tortious interference claim, including an athletic director, because they were agents of the Board). Moreover, Jacobeit alleges that District 227 authorized and approved of the actions of Dwyer and Rainey. (Dkt. No. 15, 1st Amend. Compl., ¶¶ 72, 73.) This court, therefore, finds that Jacobeit has provided enough factual

allegations to support the inference that District 227, through its agents, hired Jacobeit according to its own procedures.

The more important question, however, is whether Jacobeit had a right to *continued* employment, either for a full year or indefinitely. A right to continued employment may arise in the context of some form of tenure or explicit promise that one will not be fired unless cause is shown. *See, e.g. Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). While District 227 and Rainey are correct that under Illinois law coaches are not certified and do not obtain tenure, *School Directors of Dist. U-46 v. Kossoff*, 419 N.E.2d 658, 660 (Ill. App. Ct. 1981), Jacobeit appropriately asserts that tenure is not dispositive. *See Smith*, 708 F.2d at 264 (acknowledging that a school board may take actions that infer an agreement to employ an individual indefinitely in a coaching position despite a lack of formal tenure). "'[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972). The Court goes on to discuss that implied agreements may warrant procedural due process protection. *See id.* at 602. In *Perry*, a teacher was fired after a series of one-year contracts; the Supreme Court held that Perry did not need to be tenured to have a property interest because a property interest in continued employment had been fostered by the rules and policies of the university.

Though there was no express written contract, Jacobeit alleges that he was offered a coaching position, performed his duties, was terminated, and was subsequently paid for his work. (Dkt. No. 15, 1st Amend. Compl., ¶¶ 61, 63, 68, 69, 73.) When viewed in a light most favorable to Jacobeit, these allegations, combined with Jacobeit's allegation that coaching

positions were awarded through year-to-year contracts as a matter of course, give rise to the inference that Jacobeit had an implied one-year coaching contract. *See Anheuser-Busch, Inc. v. Beer, Soft Drink, Water*, 280 F.3d 1133, 1136 (7th Cir. 2002) (discussing that any contract requires an offer and acceptance, meeting of the minds, and consideration). "The law is clear in Illinois that public employees have no presumptive property interest in their positions. In the absence of an understanding to the contrary, an employment agreement is presumed to be an 'at-will' arrangement." *See Ericksen v. Village of Willow Springs*, 876 F. Supp. 951, 955 (N.D. Ill. 1995) (Bucklo, J.). However, Jacobeit has set forth enough factual allegations to give rise to the inference that there was an understanding to the contrary and that Jacobeit had, at a minimum, a one-year coaching contract for the 2007-2008 academic year.

Jacobeit also alleges enough facts to give rise to the inference that Jacobeit had a right to continued employment past one year. Receiving a coaching position for a number of years does not, by itself, create a contractual right to future assignment to a coaching position. *Smith*, 708 F.2d at 264. However, Jacobeit also alleges that under the District's collective bargaining agreement and long-standing practice, coaches are retained in their coaching positions until one of three things happens: (1) the person resigns; (2) the person becomes no longer qualified to perform the job; or (3) the person is terminated "for cause." (Dkt. No. 15, 1st Amend. Compl., ¶ 41.) In essence, he argues that coaches have *de facto* tenure subject to the above conditions. *See Perry,* 408 U.S. at 601-02 (holding that the policies of the final decision-maker can give rise to a conclusion that a property right exists, even in the absence of an explicit contractual provision). Because this court must accept as true and accurate all well-pleaded facts, the court finds that Jacobeit has sufficiently pled a property interest in continued employment beyond one year.

As a result of Jacobeit's arguments, this court finds that he has pled sufficiently to survive District 227's 12(b)(6) motion on the issue of whether Jacobeit had a protected property interest in the coaching position.

### ii. Sufficient Procedural Protections

District 227 and Rainey also assert that even if Jacobeit had a property interest in a coaching position, his claim would still fail because he was provided sufficient procedural protections. District 227 and Rainey contend that an adequate remedy to Jacobeit's claim is available through grievance procedures in the Professional Negotiations Agreement ("PNA"). The PNA is a contract that District 227 entered into with the teacher's union, the Rich Township High School Education Association.[1] District 227 and Rainey argue in their brief that the PNA has a binding arbitration clause, and that Jacobeit is participating in arbitration right now and therefore has failed to exhaust available procedures and remedies. However, District 227 and Rainey have not cited to, nor has this court found, any authority stating that in order to assert a procedural due process claim in federal court regarding employment termination, the plaintiff must first exhaust other available remedies. Further, Jacobeit notes that the pending arbitration addresses a different grievance than the lawsuit before this court. Therefore, the court will not dismiss Jacobeit's due process claim based on purportedly pending arbitration proceedings. As a result of Jacobeit's allegations and the fact that District 227 and Rainey's arguments have failed on this point, the court finds that it is plausible that Jacobeit was not given sufficient post-termination proceedings.

---

[1] Jacobeit attached a copy of the PNA to his First Amended Complaint, and therefore this court may consider that document when ruling on District 227 and Rainey's motion to dismiss. *See* Fed. R. Civ. P. 10(c); *see also Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) ("Any written instrument attached to the complaint is considered a part of the complaint.")

Regardless of the adequacy of the post-termination proceedings, Jacobeit argues that he was entitled to some form of pre-termination hearing. The Seventh Circuit opined that a school athletic coach may be entitled to a reason for his or her dismissal. *Smith v. Bd. of Educ.,* 708 F.2d 258, 261 (7th Cir. 1982) ("At most, the Fourteenth Amendment due process clause guarantees a state athletic coach the right to know why he is being dismissed and to convince school officials before they dismiss him that they are making a mistake, that their reasons for dismissing him are either not supported by facts or less compelling than they think.") Jacobeit alleges that he was not afforded any kind of pre-termination hearing, nor was he given a reason for his removal prior to or at the time of his removal from his coaching position. (Dkt. No. 24, Pl.'s Brief, ¶¶ 74, 75.) Even a case that the defendants cite, *Wallace v. Tillery*, 41 F.3d 296, 300 (7th Cir. 1994), involves a plaintiff who was provided with pre-termination procedures. Case law suggests that if Jacobeit had a right to continued employment, he was entitled to a reason for his termination at or before the time that he was terminated. *See Smith*, 708 F.2d at 261. As a result, Jacobeit has adequately stated a claim for a procedural due process violation because he has sufficiently pled a deprivation of a protected property interest without sufficient procedural protections.

### b.    Procedural Due Process – Liberty Interest

Lastly, District 227 and Rainey assert that Jacobeit was not deprived of a liberty interest. "To sufficiently plead the deprivation of an occupational liberty interest, the plaintiff must allege: (1) the employer made stigmatizing comments; (2) the comments were publicly disclosed; and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result." *Bryant v. Gardner*, 545 F. Supp. 2d 791, 800 (N.D. Ill. 2008) (Castillo, J.). "In such cases, the employee's good name, reputation, honor, or integrity must

be called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field." *RJB Properties, Inc. v. Bd. of Educ. of the City of Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006). To be actionable, statements made by a public official must be false assertions of fact. *Bryant*, 545 F. Supp. 2d at 800.

Jacobeit alleges a stigmatizing assertion of fact: that he made racially insensitive comments and gave racially distasteful gifts. (Dkt. 15, 1st Amend. Compl., ¶¶ 81, 93.) Jacobeit also alleges that those comments were publicly disclosed with the intent to humiliate and degrade Jacobeit when Principal Rainey told the superintendent "and others in the school community" that Jacobeit was terminated based on racially insensitive gifts and complaints made by African-American parents. (Dkt. 15, 1st Amend. Compl., ¶¶ 93, 95.) Lastly, Jacobeit alleges that he suffered a tangible loss of employment opportunities, in that he has not been able to obtain any other coaching position in the school district despite the fact that he was hired for a coaching position every year for the previous 30 years. (Dkt. 15, 1st Amend. Compl., ¶¶ 19, 113, 114.)

District 227 and Rainey argue that being unable to find another job in the district is not enough – Jacobeit needs to allege that he has not been able to find a job outside the school district. District 227 and Rainey cite two cases in support of this proposition, *Hojnacki v. Klein-Acosta*, 285 F.3d 544 (7th Cir. 2002) and *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524 (7th Cir. 2000), neither of which state that an individual must allege that he or she could not find a job outside the school district in order to state a claim for the deprivation of a liberty interest.

If Jacobeit can prove that he was stigmatized, that he could not find other work as a coach in the school district as a result of that stigma, and that it was not feasible for him to

work outside the school district, he will be able to show that his "good name, reputation, honor, or integrity . . . was called into question it a manner that [made] it virtually impossible for [Jacobeit] to find new employment in his chosen field."  *RJB Properties, Inc.*, 468 F.3d at 1011.  As a result of the foregoing analysis, Jacobeit has sufficiently pled the violation of a protected liberty interest to survive District 227 and Rainey's motion to dismiss.

     **c.**     **Assigning Responsibility**

District 227 and Rainey have failed to provide any argument with respect to whether Jacobeit's claims should survive against District 227 only, Rainey only, or both.  Because the court has decided that Jacobeit's due process claims survive a motion to dismiss, this court will allow Jacobeit's claims to go forward against both District 227 and Rainey in his individual capacity.  For the reasons stated above, Rainey is dismissed in his official capacity due to redundancy.  *See Moore v. Bd. of Educ.*, 300 F. Supp. 2d 641, 646 (N.D. Ill. 2004) (Gettleman, J.).

CONCLUSION

Defendants' Motion to Dismiss [16] is granted with regard to plaintiff Jacobeit's Count I Title VII claim against defendant Rainey in his official and individual capacity and the Count I § 1981 and § 1983 claims against Rainey in his official capacity, as well as the Count IV due process claim for deprivation of property and liberty against Rainey in his official capacity. Defendants' Motion to Dismiss [16] is denied as to the Count I Title VII claim against District 227, the Count I § 1981 claim against Rainey in his individual capacity and District 227, the Count I § 1983 claim against Rainey in his individual capacity and District 227, and the Count IV due process claim against Rainey in his individual capacity and District 227.

Defendant District 227's Answer and defendant Rainey's Answer are due December 9, 2009. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before December 17, 2009. Status hearing set for December 22, 2009 at 9:00 a.m. for purposes of scheduling further dates. The parties are encouraged to discuss settlement.

ENTERED:

_____
James F. Holderman
Chief Judge

Dated: November 25, 2009