IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED R. JACOBEIT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CV 1924 |
| | ) | |
| v. | ) | District Judge Gary Feinerman |
| | ) | |
| RICH TOWNSHIP HIGH SCHOOL DISTRICT 227 and MACEO M. RAINEY, | ) ) ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff Fred R. Jacobeit initiated this action against defendants Rich Township High School District 227 (the "District") and Rich Central Principal Maceo Rainey. In his First Amended Complaint [15], plaintiff, a long-time District employee, alleges, among other things, that the District and Principal Rainey, along with the Rich Central Athletic Director, hired him as the assistant girl's basketball coach for the 2007-08 school year at Rich Central High School. According to plaintiff, defendants unlawfully fired him two weeks later, after he started performing his coaching duties, based on his race, age and disability. For their part, defendants contend that the School Board never officially hired Jacobeit for the position. According to defendants, the Board has the sole authority to hire, a power that may not be delegated to an athletic director, principal, or any other school official. (*See* Pl.'s Mot. at Ex. A - Defs' Mot. to Dismiss, p. 4-5.)

Plaintiff now asks the Court to impose sanctions for various discovery violations explained in more detail below. Specifically, plaintiff seeks (1) an order "directing that the fact that Jacobeit was officially hired be taken as established" and prohibiting the

District from introducing any testimony that contradicts that fact; and (2) costs and attorneys' fees for prosecuting the motions for sanctions, as well as plaintiff's prior motion to compel. Alternatively, plaintiff asks the Court to enter an order allowing an independent computer analyst to conduct a forensic examination of the District's computers to discover previous versions of relevant documents and e-mails.

The parties fully briefed plaintiff's motions and the Court extensively reviewed those briefs. As set forth in our order dated November 10, 2010 [105], certain representations in the defendants' response required additional briefing to determine, among other things, the steps defendants took to preserve and gather relevant documents in this matter. Unfortunately, the briefing was delayed as a result of Rainey's contention that the School Board failed to retain an attorney of his choosing to represent him in this case. (*See Rainey v. Bd. of Educ. of Rich Township District 227*, 11 CV 107.)

Although the plaintiff has bombarded the Court with documents, many of which we view as unnecessary, and the issues have become somewhat convoluted in the parties' numerous submissions, we see plaintiff's motions as presenting three distinct issues: (1) whether defendants' untimely disclosure of certain documents warrants sanctions; (2) whether the District's undisputed destruction of an audio tape recording amounts to spoliation and warrants sanctions; and (3) whether defendants failed to take the appropriate steps to properly preserve relevant e-mails in this matter and, if so, whether that failure is sanctionable. We address each issue in turn below.

**Defendants' Untimely Disclosure of Documents**

Discovery was initially set to close in this matter on September 1, 2010. On September 3, 2010, the District produced Jacobeit's Recommendation for Hire form

2

signed by the Director of Human Resources, Selma McDonald. (Pl.'s Mot. at Ex. K.) The Recommendation for Hire form previously produced by the District included only the signature of Principal Rainey. (Pl.'s Mot. at Ex. B.). As stated on the record at the September 23, 2010 status hearing, plaintiff's counsel views this form as a "smoking gun" and pleads incurable prejudice as a result of its belated production.

Plaintiff's motions also indicate that on September 24, 2010, the District produced a number of e-mails between McDonald, Rainey, Superintendent Howard Hunigan, Athletic Director Will Dwyer, Financial Officer Ilandus Hampton and Rich East Principal Jeff Craig. (Pl.'s Mot. at Ex. O, Ex. P.) The e-mails are dated November 15, 2007 through December 17, 2007 and include direct references to Jacobeit and the coaching position primarily at issue in this case. According to plaintiff, these e-mails reveal, among other things, that (1) the Board likely approved Jacobeit's hire before the Recommendation for Hire form could be cancelled; (2) that Rainey and McDonald spoke via telephone regarding the recommendation to hire Jacobeit and that Rainey, McDonald, Hunigan and Dwyer met in person regarding the same; (4) that Dwyer gave the "authority [for Jacobeit] to work"; (5) that McDonald consulted with Craig regarding Jacobeit's employment decision; and (6) that conversations were had regarding filling the position from which Jacobeit was removed. Plaintiff takes issue with the e-mails, arguing that they are in direct conflict with prior discovery responses and testimony of the witnesses in this litigation, as well as in a related arbitration.

As noted above, as a result of defendants' delay in producing the Recommendation for Hire form and the e-mails, plaintiff seeks evidentiary and exclusionary sanctions, as well as costs and fees incurred, pursuant to Federal Rules of Civil Procedure 26 and 37. Rule 26(a) requires a party to disclose the name of each

3

individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, and to provide a copy or a description of all documents that it has in its possession and may use to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A).  Rule 26 also requires a party to supplement or amend its disclosures and discovery responses in a timely manner if it learns that the information disclosed or the response is "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).

To ensure compliance with discovery requirements, Rule 37 provides that a party that fails to provide information or identify a witness as required by Rule 26(a) or 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  While the Seventh Circuit has stated that the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless, *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998), the determination of whether the violation is in fact justified or harmless is entrusted to the broad discretion of the district court.  *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003).  In addition to, or instead of, the sanction of exclusion, a court may impose other sanctions, including: (1) ordering payment of attorney's fees and costs; (2) designating certain facts be taken as established; and (3) prohibiting a party from supporting or opposing designated claims or defenses.  Fed. R. Civ. P. 37(c)(1) (allowing the imposition of sanctions set forth in Rule 37(b)(2)(A)).  Factors to consider when determining whether exclusionary sanctions are appropriate include: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of

4

the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or wilfulness involved in not disclosing the evidence at an earlier date. *Wells v. Berger, Newmark & Fenchel*, No. 07 C 3061, 2008 WL 4365972, at *3 (N.D. Ill. Mar. 18, 2008) (*citing David*, 324 F.3d at 857).

With respect to the Recommendation for Hire form, plaintiff argues that the late disclosure of this so-called "smoking gun" document severely hindered his ability to properly pursue discovery when paired with what he views as prior misleading and inconsistent testimony. We disagree. Accepting plaintiff's heavy-handed reliance on the Recommendation for Hire form would require this Court to draw factual and legal conclusions not supported by the record before us. For example, according to plaintiff, the document "debunks the District's defense that it did not 'hire' Jacobeit because the District cannot be bound 'solely' by the acts of Principal Rainey and/or Athletic Director Dwyer." (Pl's. Mot. at 3.) Citing portions of Superintendent Howard Hunigan's deposition, plaintiff contends that Hunigan in fact authorized McDonald to determine the procedures through which hiring decisions are made, as well as for processing the paperwork resulting in the hire. However, plaintiff mischaracterizes Hunigan's testimony. Even the piecemeal transcript of Hunigan's deposition reveals his belief that the hiring of District personnel, including coaches, must be approved by the School Board. (Pl.'s Mot. at Ex. L - Hunigan Dep. at 14-16, 22.) Other deponents share this same view. (*See, e.g.,* Pl.'s Mot. at Ex. H - Brookins Dep. at 9.) Thus, contrary to plaintiff's assertion, the mere fact that McDonald's signature is included on the Recommendation for Hire form does not necessarily "debunk" the District's defense in this litigation, nor is that issue properly before this Court.

Plaintiff also relies heavily on the fact that McDonald signed the newly-disclosed

5

Recommendation for Hire Form on November 13, 2007, the day before Principal Rainey purportedly told Superintendent Hunigan that he wished to pull his recommendation to hire Jacobeit for the coaching position. Plaintiff also notes that the Classified-Exempt Personnel Report, which was provided to the School Board members for "consent agenda" approval at the November 14, 2007 meeting, is also dated November 13, 2007. According to plaintiff, because he "did not know that the Recommendation to Hire form had advanced as far as it did...[he] spent no time trying to discover when (or whether) his name had been on the Personnel Report list of hires that was presented to the School Board" for the November 14, 2007 meeting. (Pl.'s Mot. at 5.) Instead, plaintiff purportedly turned his discovery efforts to developing alternative methods of proving that he was in fact hired, notwithstanding the fact that his name was not included on the Personnel Report.

Again, accepting plaintiff's contention that the Personnel Report may have included Jacobeit's name at some point in time would require this Court to improperly draw inferences and make factual conclusions in favor of plaintiff and we decline to do so.[1] Instead, guided solely by the standard set forth above, we need only determine whether the District violated its duties under the Federal Rules by failing to produce the form earlier. We find that it did not. In particular, the District's delay in producing the form did not so severely prejudice the plaintiff as to warrant the evidentiary and

---

[1] The parties spend a great deal of time addressing the various versions of the Personnel Report that the District has produced in this litigation, including what the date listed on each version represents (print date vs. revision date), and what inferences, if any, can be drawn from that date when viewed in connection with the other evidence and testimony gathered in the case. Now that the District has fully explained its discovery efforts with respect to the Personnel Report and reasons for producing different versions of that document, we see no reason to discuss it further or to accept any inferences proposed by any party. Further, on the record before us, we deny plaintiff's request for an order allowing an independent computer analyst to search the computer on which the form was created for earlier versions of the form.

exclusionary sanctions he seeks. Although plaintiff deposed a number of District officials prior to receiving the second version of the Recommendation for Hire form, plaintiff was able to question those officials about the significance of the form and its role in the hiring process, as the District previously produced the form, albeit a different version. The fact that plaintiff may not have gotten the answers he wanted or expected is of no moment. Nonetheless, because, as explained below, we are granting plaintiff leave to re-depose McDonald, we will allow plaintiff to question her regarding her knowledge of the version of the Recommendation for Hire form that includes her signature.

With respect to the e-mails produced three weeks after the close of discovery, plaintiff argues that he has been severely prejudiced because, in his view, the e-mails further demonstrate that the prior testimony adduced by the witnesses was false and intentionally misleading. As with the Recommendation for Hire, we find that the plaintiff is taking creative liberties with the record before the Court and improperly asking the Court to do the same. As such, we disagree that the severe sanctions plaintiff seeks are appropriate. We do agree, however, that plaintiff has been prejudiced in that he was unable to question the witnesses about these e-mails at their depositions. We are troubled by the fact that the delayed production of the e-mails resulted from a misunderstanding between defense counsel and McDonald regarding whether e-mails were responsive to plaintiff's discovery requests. (*See* District's Supp. Brief at 5.) Plaintiff's ability to conduct discovery should not suffer as a result of this misunderstanding. Further, it is fair to say that plaintiff may have been surprised by these newly produced e-mails, in that they do include some contradictions to prior testimony. While it does not follow that the witnesses provided false testimony, and we

could easily presume that they simply did not recall the events and conversations that transpired years ago, we agree that plaintiff should be allowed to re-question certain witnesses regarding the e-mails.

For all of these reasons, Plaintiff is granted leave to re-depose Rainey, McDonald, Hunigan and Dwyer regarding the e-mails produced after the close of discovery.[2] As mentioned above, plaintiff may also question McDonald about the Recommendation for Hire form that includes her signature. These depositions must be completed on or before 6/17/11, and the parties are directed to split the costs of court reporter fees. Extensions to the 6/17/11 deadline will only be granted in extraordinary circumstances.

**Defendants' Purported Spoliation**

<u>The District's Destruction of the Audio Tape Recording</u>

Plaintiff seeks sanctions for the District's undisputed destruction of an audio tape recording of a closed session discussion at a School Board meeting on April 15, 2008.[3] At that meeting, plaintiff's Union Representative, Christy Hagemeister, read a written statement to the Board regarding plaintiff's alleged wrongful termination from the Rich

---

[2] We reject the defendants' assertion that plaintiff is not entitled to re-depose McDonald and Rainey because their original depositions were set before defendants' responses to discovery were due. However, we do agree that plaintiff is not entitled to depose Hampton and Craig. While the e-mails reveal additional facts regarding their involvement in Jacobeit's alleged termination, as defendants note, plaintiff was already aware, through prior discovery in the arbitration and this litigation, that Hampton played a role in determining staffing levels and authorizing personnel payments. Further, plaintiff cannot deny that he knew that Craig played a role in the investigation into his purported improper behavior as a coach at Rich East, which may or may not have played a role in his failure to get the Rich Central position. We do not agree that the fact that the new e-mails reveal that Craig participated in conversations at the time of the events in question entitles plaintiff to depose Craig when he chose not to do so during the normal course of discovery.

[3] Additionally, plaintiff seeks sanctions for the destruction of an audio tape from the November 14, 2007 School Board meeting, which immediately followed Jacobeit's alleged termination from the position. We find that plaintiff's contention that relevant discussions took place at that meeting is unsupported by any of the documents or testimony presented to this Court.

8

Central assistant coaching position. (Pl.'s Mot. at Ex. V.) Hagemeister asked the Board to "fix this injustice" by paying Jacobeit the entire 2007-2008 assistant coach stipend. (*Id.*) As noted in the Board's minutes, following Hagemeister's presentation, the Board discussed the matter in closed session. (*Id.*)

In his amended motion to compel [52], plaintiff asked this Court to compel production of the audio tape of the closed session discussion as responsive to RFP No. 7, which sought "all documents that pertain to the decision to terminate/non-renew or withdraw the offer of employment of assistant girls' basketball coach in the 2007-08 academic year." (Pl.'s Am. Mot. to Compel at ¶ 5.) In response, the District objected to producing the audio tape, arguing that "any consideration by the Board of the Union's after-the fact request that Plaintiff be paid the entire stipend would not even be relevant, let alone responsive to Request No. 7...." (Def.'s Resp. to Mot. to Compel at 6.)

Over the District's objection, this Court held:

> To the extent that the Board discussed plaintiff's alleged termination from the position, a request for reinstatement and/or a stipend, those discussions are certainly relevant to issues in this case. To the extent such a discussion occurred and was recorded, the defendant must produce the recording. If such a recording does not exist, defendant shall so certify in writing by 12:00 p.m. on 9/20/10. [75].

Following this ruling, the District informed plaintiff's counsel that the audio tape recording of the April 15, 2008 Board meeting had been destroyed.[4] (Pl.'s Mot. at Ex. U.) Plaintiff now asks the Court to impose sanctions for the District's improper destruction of the audio tape.

---

[4] We stand corrected with respect to the date on which we indicated that the tape was destroyed in our prior order. Although the District's submissions caused some confusion for both the Court and the plaintiff, it is now clear that the tape at issue was placed in the disposal bin on October 21, 2009, not in December 2009.

9

For its part, the District again argues that, even if it existed, the audio tape of the April 15, 2008 meeting would not be relevant to this litigation because it involved the plaintiff's grievance at the administrative level, as opposed to the initial decision not to recommend plaintiff for the coaching position. The District further contends that discovery of the audio tape would have been barred by § 2.06(e) of the Illinois Open Meetings Act, 5 ILCS 120/1, *et seq.*,[5] the attorney-client privilege, and the deliberative process privilege.[6]

We reject the District's assertion that the audio tape of the closed session meeting would have been barred from discovery. In doing so, we recognize that some courts have found that transcripts and recordings of closed session meetings are barred under the Open Meetings Act and/or the attorney-client and deliberative process privileges. *See, e.g., Sandholm v. Dixon Public School Dist. No. 170,* No. 09 C 50119, 2010 WL 899032 (N.D. Ill. Mar. 10, 2010) (barring plaintiff access to certain portions of transcripts from closed session school board meetings pursuant to the Open Meetings Act, the deliberative process privilege, and the attorney-client privilege); *Kodish v. Oakbrook Terrace Fire Protection Dist.,* 235 F.R.D. 447 (N.D. Ill. 2006) (finding that portions of the audio tape recording of a closed session meeting were privileged under

---

[5] Section 2.06(e) of the Illinois Open Meetings Act provides, in relevant part:

> Unless the public body has made a determination that the verbatim recording no longer requires confidential treatment or otherwise consents to disclosure, the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act. 5 ILCS 120/2.06(e).

[6] "The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *Tumas v. Bd. of Educ. of Lyons Tp. High School Dist. No. 204*, No. 06 C 1943, 2007 WL 2228695, at *1 (N.D. Ill. July 31, 2007) *(quoting United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993)).

10

the attorney-client privilege); *but cf. Sronkoski v. Schaumburg School Dist., No. 54*, No. 08 C 721, 2009 WL 1940779 (N.D. Ill. July 1, 2009) (ordering school district to turn over unredacted minutes and the audio recording of closed session board meetings). It is of note, however, that in reaching those decisions, the courts had the benefit of an *in camera* review of the transcripts from the closed session meetings.

Here, due to the District's destruction of the audio tape, we are without the proper means to determine whether the discussion at the closed session meeting on April 15, 2008 would have been privileged or protected under the Open Meetings Act. As such, we decline to reward defendants the protection of the Act or the privileges where its failure to preserve the tape prevents this Court from properly determining whether such protection is appropriate. However, it does not necessarily follow that the District's destruction of the tape warrants sanctions.

Courts have the inherent power to impose sanctions for abuses of the judicial system, including the failure to preserve documents. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993); *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 23, 2000). This inherent power is grounded in the ability of the courts to manage their own dockets and ensure the expeditious resolution of cases. *Barnhill*, 11 F.3d at 1367. Rule 37 provides additional statutory authority to sanction a party for the failure to preserve documents, but only where a court order or discovery ruling has been violated. *Danis*, 2000 WL 1694325, at *30; *Wiginton v. Ellis*, No. 2003 WL 22439865, at *3, n.5 (N.D. Ill. Oct. 27, 2003). In any event, the analysis under the court's inherent powers and Rule 37 is essentially the same. *Danis*, 2000 WL 1694325, at *30.

Courts have broad discretion to choose an appropriate sanction for spoliation

based on the unique facts of each case. *Id.* at *31 (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.* 427 U.S. 639, 642 (1976)). The Seventh Circuit requires any sanctions rendered to be proportionate to the offending conduct. *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997). When determining a proper sanction, the Court should consider three principle factors: (1) a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and (3) the prejudice that results from the breach. *Danis*, 2000 WL 1694325, at *31. Sanctions are only called for where wilfulness, bad faith, or fault is shown. *Marrocco* v. *General Motors Corp.,* 966 F.2d 220, 224 (7th Cir.1992).

"Wilfulness" and "bad faith" are characterized by conduct which is either done intentionally, for the purpose of hiding adverse information, or in reckless disregard of a party's obligations to comply with a court order. *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 1997); *Marrocco*, 966 F.2d at 224; *Mathis v. John Morden Buick*, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998). In some cases, "fault" – as opposed to bad faith or wilfulness – may form a sufficient basis for sanctions. *Marrocco*, 966 F.2d at 224; *Jones v. Bremen High School*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010). "Fault" does not speak to the noncomplying party's disposition, but describes only the reasonableness of the conduct – or lack thereof – that eventually resulted in the violation. *Marrocco*, 966 F.2d at 224; *Langley*, 107 F.3d at 514. "Fault may be evidenced by negligent actions or a flagrant disregard of the duty to preserve potentially relevant evidence." *Wiginton*, 2003 WL 22439865, at *6 (*citing Diersen*, 2003 WL 21317276, at *5).

Here, we find that the District's duty to preserve relevant evidence was triggered no later than when it learned of plaintiff's EEOC charge on June 23, 2008, at which time

12

the audio recording remained intact and in the District's possession. *See Jone*s, 2010 WL 2106640, at *6 (employer's duty to preserve relevant documents arose at the time it learned of plaintiff's EEOC charges). Because we have already determined that the tape may have included relevant evidence under the broad purview of Rule 26, we find that the District breached its duty when it destroyed the tape in October 2009. However, on this record, we do not find that the District's destruction of the tape rises to the level of bad faith, wilfulness, or fault. Not only was the tape destroyed pursuant to the District's normal document destruction policy, we do not find it entirely unreasonable that, at the time of destruction, the District believed any discussions regarding the grievance to be unrelated to plaintiff's allegations of race, age, and disability discrimination in this action. We reach this conclusion even though we have determined that the tape likely included relevant evidence under Rule 26. Further, even if we found the District to be at "fault" for the destruction of the tape, we do not agree that the resulting prejudice to the plaintiff, *i.e.* not being privy to the brief conversation between the Board members, warrants the severe evidentiary sanctions plaintiff seeks. In any event, we will allow plaintiff to question McDonald about that conversation as plaintiff was apparently unaware of McDonald's presence at the meeting at the time of her initial deposition. We address plaintiff's request for costs and fees below.

<u>Defendants' Efforts to Preserve Relevant E-mails</u>

In the course of briefing the plaintiff's motions, a new issue arose regarding the District's and Rainey's efforts to preserve relevant e-mails in this litigation. The District's supplemental brief addresses this issue extensively. That brief reveals that upon receiving notice of the plaintiff's EEOC charge, counsel for the District asked McDonald to identify the individuals who had a role in the decisions that gave rise to the charge. In

response, McDonald identified Hunigan, Rainey and Dwyer.  Counsel directed McDonald to arrange interviews with Rainey and Dwyer, and to direct them to gather all documents, including e-mails, that related to the decision to withdraw the recommendation to hire Jacobeit for the position.  Neither Rainey nor Dwyer provided defense counsel with any e-mails at those interviews.  The District's supplemental brief also reveals that it did not implement a litigation hold in this matter either upon notice of the EEOC charge or the filing of the complaint.

As noted above, in September 2010, briefly after the close of discovery, a misunderstanding arose regarding the need for McDonald to produce e-mails in response to plaintiff's discovery requests.  After learning that she was required to produce e-mails, McDonald directed the District's Director of Technology, Ted Koutavas, to search the e-mail server for any e-mails that contained the term "Jacobeit."  As a result of the capabilities of the District's computer systems, Koutavas was unable to search the entire server and instead could only search individual employee mailboxes.  Koutavas is confident that he searched the mailboxes of Rainey, Hunigan, and McDonald, and it was this search that revealed the e-mails produced by the District on September 24, 2010 and discussed in detail above.

It was not until this Court sought additional information regarding defendants' preservation efforts that the District, through counsel, engaged in a thorough search of all relevant employee mailboxes for a wide range of search terms for the dates between May 2007 and July 2008.  Counsel also directed Koutovas to search the home directories and hard drives of a number of employees for information, including the term "Jacobeit."  These searches revealed only two additional documents, which the District has since tendered to the plaintiff.

14

Here, as above, we find that the District had a duty to preserve relevant e-mails and breached that duty by failing to take reasonable steps to preserve e-mails upon notice of plaintiff's EEOC charge or the litigation. While the District's conduct does not amount to wilfulness or bad faith, as there is no indication that the defendants sought to hide adverse evidence, we agree that the District's negligent and untimely preservation efforts amount to "fault."

As for any prejudice suffered by the plaintiff, we find it to be minimal. While the District's failure to take immediate steps to preserve e-mails may have indeed resulted in the destruction of e-mails, the District has offered a sworn affidavit from McDonald indicating that it is her normal practice to retain personnel related e-mails. McDonald's personnel related e-mails have in fact been produced and undoubtedly cover the relevant time period at issue with respect to the Rich Central position. Plaintiff's ability to question the authors and recipients of those e-mails will assist in minimizing any prejudice plaintiff may have suffered as a result of defendants' conduct. The District's comprehensive search of the available mailboxes, hard drives, and home directories in response to this Court's order further quells concerns regarding the potential for missing evidence.[7] Accordingly, we decline to impose evidentiary sanctions against either defendant for any failure to preserve relevant e-mails.

Plaintiff's request for an order allowing a forensic analyst to inspect the District computers for any additional e-mails is also denied. The District's supplemental brief reveals that the estimated monetary burden of such an inspection – $51,000 – greatly

---

[7] We distinguish this case from *Jones v. Bremen H.S. Dist. 228*, in which there was evidence that District officials did in fact delete e-mails relevant to the litigation and the time frame of alleged discrimination spanned multiple years. No. 08 C 3548, 2010 WL 2106640 (N.D. Ill. May 25, 2010).

15

outweighs the minimal likelihood that it would reveal additional relevant evidence. (District's Supp. Brief at Ex. 12.) However, we find that it was defendants' haphazard and delayed approach to electronic discovery that required plaintiff to file the instant motions for sanctions to determine whether relevant evidence was in fact preserved in this litigation. Thus, we conclude that the District should bear the reasonable costs and attorney's fees incurred by plaintiff in filing his motions and reply brief in support thereof. However, to account for what we view as overly inclusive and repetitive submissions by the plaintiff, we will not allow plaintiff to recover costs or fees for the preparation or review of supplemental briefing ordered by this Court. Nor will we allow plaintiff to recover fees and costs for the prior motion to compel. While the audio tape and Recommendation for Hire form were addressed briefly in that motion, the bulk of the issues raised related to other discovery disputes. Finally, we decline to impose monetary sanctions against defendant Rainey individually, as we do not agree that Rainey's conduct amounts to sanctionable conduct, despite the fact that Rainey has provided minimal information regarding that conduct. (*See* Rainey's Supp. Resp. [145].)

For all of the foregoing reasons, plaintiff's motions are granted in part and denied in part. By 6/8/11, plaintiff's counsel shall provide counsel for the District with a statement setting forth the fees and costs incurred for the filings set forth above. That statement shall specify the date, time and nature of services rendered, shall state the applicable billing rate and shall identify all costs incurred. By 6/22/11, counsel for the District shall serve a statement on plaintiff's counsel addressing any specific item disputed. Following the exchange of such statements, the parties shall meet and confer telephonically or in person in an attempt to resolve any remaining disputes surrounding the fees and costs. The parties shall strictly comply with Local Rule 54.3(e) and (f) if

16

they intend to seek additional relief from the Court. It is so ordered.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: May 25, 2011**