UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED R. JACOBEIT, | ) |
|                 Plaintiff, | ) |
| | ) 09 C 1924 |
|     vs. | ) |
| | ) Judge Feinerman |
| RICH TOWNSHIP HIGH SCHOOL DISTRICT 227 and MACEO M. RAINEY, | ) |
|                 Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fred Jacobeit brought this suit against the Board of Education of Rich Township High School District 227 and Maceo M. Rainey, the prinicpal of Rich Central High School, under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The § 1983 claims allege violations of Jacobeit's equal protection and procedural due process rights. The court dismissed the Title VII claim against Rainey and the § 1983 claim against Rainey in his official capacity. 673 F. Supp. 2d 653 (N.D. Ill. 2009) (Holderman, C.J.). Jacobeit has given up his ADA and ADEA claims. Doc. 205 at 1 n.1. Now before the court are the District's motion for summary judgment on Jacobeit's remaining claims (Doc. 172) and Jacobeit's motion for summary judgment on his due process claim (Doc. 177).* Both motions are denied.

---

    * For reasons immaterial for present purposes, District 227's counsel, who had been jointly representing the District and Rainey, withdrew as Rainey's counsel before the summary judgment motions were filed. Doc. 116; *see Rainey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 2011 WL 741039 (N.D. Ill. Feb. 24, 2011) (dismissing for want of subject matter

**Background**

District 227 hired Jacobeit in 1978 to teach physical education and driver's education. He worked as a coach in District 227 for thirty years in seventeen different coaching positions and received several awards for his performance. In 2007, Jacobeit applied to become the assistant coach of the girls' basketball team at Rich Central High School. He spoke to Will Dwyer, the school's athletic director, who was "excited to learn" of his interest. After an interview on October 19, 2007, Dwyer told Jacobeit that he had been selected. Jacobeit accepted the position and began coaching. He was listed as the assistant coach in a handbook distributed to student players and was given an electronic key fob allowing him access to the appropriate facilities. Principal Rainey executed a "Recommendation for Hire Form" prepared by Dwyer and sent it to Selma McDonald, District 227's human resources director. McDonald executed the form on November 13, 2007, and sent it to the District's Superintendent, Howard Hunigan.

In the meantime, Rainey decided that Jacobeit should not be hired and told Dwyer to instruct Jacobeit to stop coaching. Rainey had been confronted by parents who claimed that Jacobeit had engaged in racially insensitive behavior when coaching another high school's basketball team during the 2005-2006 season. The allegation was that Jacobeit, who is white, gave charged gag gifts, including "black tar baby" dolls, to members of the predominantly African-American team. That incident had been publicized, with Jacobeit maintaining that the alleged "tar baby" doll was in fact a hooded Star Wars figure given to a student who regularly

---

jurisdiction the separate lawsuit brought by Rainey against District 227 for its alleged failure to provide him with conflict-free counsel). As a result of this and Rainey's failure to retain substitute counsel, Rainey did not file his own summary judgment motion and did not file a substantive response to Jacobeit's motion. Doc. 211. Rainey's forfeiture notwithstanding, the court gives Rainey the benefit of District 227's arguments to the extent they apply with equal force to him.

wore a hood at school. The authorities apparently believed Jacobeit, who was not disciplined. Rainey nonetheless pressed forward; he asked Superintendent Hunigan to rescind the Recommendation for Hire Form, and Hunigan complied.

On November 13, 2007, Dwyer told Jacobeit that the offer had been rescinded. District 227 approved a payment to Jacobeit to compensate him for the time he spent coaching. The teacher's union filed a grievance, and the arbitrator found that District 227 had entered into a contract with Rainey to fill the coaching position and had breached that contract by removing him. Doc. 191-24. Jacobeit formally retired from the District in 2008. Although he did not apply for any other coaching positions in District 227, Jacobeit admits that he later applied for and received a position as an assistant basketball coach at a high school in another district. Doc. 206 at 18.

## Discussion

### I. The District's Summary Judgment Motion

The District's memorandum in support of its summary judgment motion (Doc. 173) cites to raw record materials rather than to its Local Rule 56.1(a)(3) statement (Doc. 174). It has long and repeatedly been held that this practice violates Local Rule 56.1. *See*, *e.g.*, *Loop Paper Recycling, Inc. v. JC Horizon Ltd.*, 2011 WL 3704954, at *5 n.8 (N.D. Ill. Aug. 17, 2011); *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *2 (N.D. Ill. Mar. 30, 2011); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"); *Daoust v. Abbott Labs.*, 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("Citing directly to the record in the memorandum statement of facts, as [the movant] does here, rather than citing to its 56.1(a)(3) statement, negates the purpose of the summary judgment exercise.");

*Alvi v. Metro. Water Reclamation Dist. of Greater Chi.*, 2006 WL 1762032, at *2 (N.D. Ill. June 23, 2006) ("Mr. Alvi's response memorandum is written without ever referencing the Rule 56.1 factual filings, and instead improperly cites to raw discovery record material. This citation practice is materially improper."); *Madaffari v. Metrocall Cos. Grp. Policy GL*, 2005 WL 1458071, at *1 (N.D. Ill. June 15, 2005) ("when citing to the record in their legal memoranda, parties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record"); *Ciesielski v. Hooters of Am., Inc.*, 2004 WL 1699020, at *1 (N.D. Ill. July 28, 2004) ("In their summary judgment briefs, both parties cited directly to the record rather than to their Rule 56.1 statements. This blatant violation of the Local Rules is improper."); *Denari v. Genesis Ins. Co.*, 2003 WL 22964371, at *1 n.3 (N.D. Ill. Dec.15, 2003) ("The Court further notes that in his memorandum of law, Denari cites directly to the record rather than to his Rule 56.1 statement. This is improper.") (citation omitted); *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("[c]itations in the fact section should be to the 56.1(a) or (b) statement of facts only, … [not] directly to pieces of the record").

A party moving for summary judgment cannot expect its motion to be granted if it fails in a significant respect to comply with the rules. The District's summary judgment motion accordingly is denied due to its violation of Local Rule 56.1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[w]e have … repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1") (internal quotation marks omitted, brackets in original); *Jorden v. United States*, 2011 WL 4808165, at *1 (N.D. Ill. Oct. 11, 2011) (denying the defendant's summary judgment motion because its brief cited to raw record materials rather than to its Local Rule 56.1(a)(3) statement); *Sledge v. Bellwood Sch. Dist. 88*, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (denying a summary judgment motion due in

part to movant's violation of Local Rule 56.1); *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 2010 WL 2035720, at *5 (N.D. Ill. May 19, 2010) ("Failure to comply with Local Rule 56.1 is grounds for denial of a summary judgment motion.").

II.     **Jacobeit's Summary Judgment Motion**

Jacobeit's motion for summary judgment on his due process claim complies with Local Rule 56.1 and thus will be addressed on the merits. Jacobeit alleges that he was deprived without due process of a protected property interest in continued employment as the assistant girls' basketball coach at Rich Central. He also alleges that the District and Rainey deprived him of a protected occupational liberty interest by appearing to credit the extremely damaging notion that Jacobeit had engaged in racially insensitive behavior during the 2005-2006 basketball season. Both aspects of Jacobeit's due process claim are considered in turn.

A.      **Property Interest**

A plaintiff alleging deprivation of property without due proces must show: "(1) conduct by someone acting under the color of state law; (2) that deprives the plaintiff of a protected property interest; (3) without due process of law." *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011); *see also Germano v. Winnebago Cnty., Ill.*, 403 F.3d 926, 927 (7th Cir. 2005). To satisfy the second element of his claim, Jacobeit must prove that he had "a legitimate expectation of continued employment under Illinois law." *Redd*, 663 F.3d at 296. At-will employees do not have a property interest in continued employment under Illinois law. *See id*. at 295 ("an employer may fire an at-will employee for any reason or no reason"); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 495 (7th Cir. 2010) ("[the plaintiff] was an at-will employee and the [employer] could have terminated his employment without just cause"); *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993) ("As an 'at-will employee' the plaintiff

clearly had no entitlement to continued employment and thus could be dismissed at any time for any reason.").

Jacobeit is not entitled to summary judgment on his deprivation of property claim because the record, with all reasonable inferences drawn in the District's favor, would permit a reasonable jury to find that Jacobeit worked as an at-will employee in his capacity as assistant girls' basketball coach at Rich Central. Jacobeit's contrary position rests on the premise that District 227 delegated to school officials like Dwyer (the athletic director) the authority to hire coaching staff. In support, Jacobeit points to District 227's longstanding practice of treating the School Board's ratification of hiring decisions as a formality and to the District's custom of treating hired officials as "tenured" and subject to dismissal only for cause. Doc. 181 at 4.

However, Illinois law clearly provides that a school board cannot delegate its authority to hire and fire school personnel. *See Ill. Educ. Ass'n Local Cmty. High Sch. Dist. 218 v. Bd. of Educ. of Sch. Dist. 218 Cook Cnty.*, 340 N.E.2d 7, 9 (Ill. 1975) (the school board's responsibility to "appoint teachers" and to "terminate the employment of teachers" are "discretionary powers and may not be delegated"); *Midwest Cent. Educ. Ass'n, IEA-NEA v. Ill. Educ. Labor Relations Bd.*, 660 N.E.2d 151, 155 (Ill. App. 1995) (same); *Sitton v. Gibbs*, 392 N.E.2d 244, 247 (Ill. App. 1979) ("matters pertaining to hiring and firing of school personnel are discretionary functions and therefore cannot be delegated"); *Litin v. Bd. of Educ. of City of Chicago*, 391 N.E.2d 62, 65 (Ill. App. 1979) ("The inherent fallacy in the Board's argument is that it fails to recognize that the authority of the School Board to hire and fire a teacher is discretionary and cannot be delegated or exercised by someone other than the Board."). The record does not indisputably show that the School Board ever ratified, formally or informally, Dwyer's decision to hire Jacobeit as assistant coach. Given this, a reasonable jury could find that Jacobeit did not have a

legitimate expectation of continued employment under Illinois law. *See Alexander v. Bd. of Educ. of Indian Prairie Sch. Dist. No. 204*, 1998 WL 699020, at *4 (N.D. Ill. Oct. 5, 1998) ("Defendants are correct that the existence of a property right depends upon the validity of the Contract as an enforceable agreement between [the plaintiff] and the Board. The verbal agreement between [the assistant superintendent] and [the plaintiff] does not suffice to create a binding contract between the parties because [the assistant superintendent] did not have the authority to make hiring decisions. … . Only the Board itself had the power to officially hire [the plaintiff]."). District 227 and Rainey should not take too much comfort in this conclusion, as the School Board's failure to formally execute an employment contract with Jacobeit does not indisputably establish that Jacobeit did *not* have a legitimate expectation of continued employment. *See ibid*. ("Defendants are mistaken in asserting that no binding agreement existed simply because the Board never signed the Contract. Although unsigned, a document may still be a valid employment contract for a specific term. [A] party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it. Following this analysis, it is possible that, under some set of facts, [the plaintiff] could prove that the Board assented to and became bound by the terms of the Contract.") (first alteration in original, citation omitted, and internal quotation marks omitted). A jury will have to resolve this issue.

In a footnote, Jacobeit invokes collateral estoppel to argue that the arbitrator's decision that District 227 entered into a contract with him precludes the District from disputing his legitimate expectation of continued employment. Doc. 181 at 12 n.7. The contention is wrong. The Supreme Court has explicitly rejected the view that an arbitrator's findings have preclusive effect in a subsequent § 1983 lawsuit. *See Chi. Teachers Union, Local No. 1 v. Hudson*, 475

U.S. 292, 308 n.21 (1986) (an "arbitrator's decision would not receive preclusive effect in any subsequent § 1983 action"); *McDonald v. W. Branch*, 466 U.S. 284, 290 (1984) (arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the … constitutional rights that § 1983 is designed to safeguard"); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263-64 (2009) (citing cases); *Kulavic v. Chi. & Ill. Midland Ry. Co.*, 1 F.3d 507, 513-15 (7th Cir. 1993) (citing cases). Jacobeit's preclusion argument is conclusively defeated by this precedent.

### B. Occupational Liberty Interest

A plaintiff alleging deprivation of an occupational liberty interest must show "that '(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure.'" *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (quoting *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)) (citation omitted). To satisfy the third requirement, a plaintiff "must allege that his 'good name, reputation, honor or integrity [was] called into question in a manner that makes it virtually impossible for [him] to find new employment in his chosen field.'" *Ibid.* (quoting *Townsend*, 256 F.3d at 670) (citations omitted); *see also Hannemann v. S. Door Cnty. Sch. Dist.*, __ F.3d __, 2012 WL 858607, at *6 (7th Cir. Mar. 15, 2012). If the plaintiff still works in his chosen field, he cannot make that showing. *See Abcarian*, 617 F.3d at 941 ("Abcarian cannot meet this burden for a simple and benign reason: he still has his job in his chosen profession!"); *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003); *Townsend*, 256 F.3d at 670.

To support his position on the third requirement, Jacobeit points to what he calls "Superintendent Hunigan's admission that Jacobeit would not be hired as a coach in the District

again." Doc 181 at 15. This argument fails for two reasons. As an initial matter, contrary to Jacobeit's submission, Superintendent Hunigan did not rule out hiring Jacobeit again. Doc. 201 at 28 ("The issue would be [the term] never. I would not concur with that."). In any event, even if District 227 would never again have hired Jacobeit to coach, Jacobeit admits that he sought and found employment as a coach in another district. Given this, a reasonable jury could find against Jacobeit on the occupational liberty component of his § 1983 due process claim.

### Conclusion

For the foregoing reasons, Jacobeit's and District 227's summary judgment motions are denied. Jacobeit's ADA and ADEA claims, having been relinquished, are dismissed with prejudice. This case will proceed to trial on Jacobeit's § 1981, § 1983, and Title VII claims.

March 28, 2012

_____
United States District Judge